# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

John Weninger, on behalf of himself and all others similarly situated,

                     Plaintiff,

    vs.

General Mills Operations, LLC,

                     Defendant

Case No. 18-cv-321

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND AUTHORIZATION OF NOTICE TO SIMILARLY SITUATED PERSONS PURSUANT TO 29 U.S.C. § 216(b)

Defendant General Mills Operations, LLC ("Defendant" or "General Mills), by and through its counsel, submits this Opposition to Plaintiff's Motion for Conditional Certification and Authorization of Notice to Similarly-Situated Persons Pursuant to 29 U.S.C. § 216(b).

## I.    INTRODUCTION

Plaintiff's Motion (Dkt. 17) should be denied because it does not identify an unlawful policy or practice that violates the Fair Labor Standards Act ("FLSA") that applied both to Plaintiff and the putative collective of every non-exempt production employee in every General Mills production facility. Plaintiff's claims are premised on his mistaken belief that General Mills has an "unlawful" policy of failing to incorporate Wage Incentive Bonuses into non-exempt production employees' regular rate of pay for overtime compensation purposes. Yet, as confirmed by Plaintiff's own declaration, Plaintiff agrees that his Wage Incentive Bonus was based on a percentage of his total earnings, which General Mills has confirmed included any overtime earnings. Pursuant to 29 CFR § 778.210, General Mills was not required to recalculate Plaintiff's or any other nonexempt production employee's regular rate upon payment of the

Wage Incentive Bonuses, because a bonus paid as a predetermined percentage of an employee's total compensation – including both straight time and overtime – increases the total earnings (including any overtime earnings) by the same percentage and thereby already includes any additional overtime compensation owed as an arithmetic fact.

Because the Wage Incentive Bonuses indisputably comply with 29 CFR § 778.210, Plaintiff has failed to identify any "unlawful practice" violating the FLSA, much less one that can be alleged to be uniformly applied.  Additionally, the bonus plan under which Plaintiff earned his Wage Incentive Bonuses at General Mills' Milwaukee production plant differs from the Wage Incentive Bonus plans in effect at other General Mills production plants during Plaintiff's employment. Notably some production plants did not even pay Wage Incentive Bonuses at all.  As a result, Plaintiff clearly cannot meet his burden of showing he is similarly situated to the putative collective he seeks to represent with respect to a common _unlawful policy or practice_, and his motion to conditionally certify this putative collective should be denied.

Plaintiff's approach to his Motion may stem from the mistaken assumption that this Court will grant conditional certification as a matter of course.  This, of course, is not true, as this Court has long held that the modest factual showing necessary for conditional certification "is not a mere formality." _Adair v. Wisconsin Bell, Inc._, Case No. 08-C-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008).  Because Plaintiff's Motion does not satisfy the criteria necessary for conditional certification, it should be denied.

## II.    FACTUAL BACKGROUND

### A.    General Mills Operates Numerous Production Facilities Throughout The United States.

General Mills operates approximately 27 facilities in the United States that are part of the production process of a wide variety of food products ("Production Facilities").  (Defendant's

Proposed Findings of Fact ("PFOF") 1.)  While each Production Facility plays a role in the production process generally, many of them function and operate differently from one another. (PFOF 2.)  For example, some Production Facilities are milling facilities which grind or crush wheat into flour for flour-containing products.  (PFOF 3.)  Some Production Facilities are more directly involved in packaging and shipping products worldwide.  (PFOF 4.)

In addition to their varied purposes, Production Facilities also vary as to their workforces. (PFOF 5.)  Some Production Facilities have a unionized workforce covered by a Collective Bargaining Agreement.  (PFOF 6.)  Some Production Facilities are large, while others may have smaller workforces of less than 15 people.  (PFOF 6.)

**B.      Some, But Not All, General Mills Production Facilities Have Hourly Incentive Programs That Pay Wage Incentive Bonuses To Non-Exempt Production Employees.**

From March 2, 2015 through March 2, 2018, some General Mills Production Facilities adopted Hourly Incentive Programs. (PFOF 8.)  As part of these Hourly Incentive Programs, Production Facilities could choose to pay biannual bonuses to their non-exempt production employees ("Wage Incentive Bonuses").  (PFOF 9.)  From March 2, 2015 through May 31, 2017, General Mills did not have a uniform Hourly Incentive Policy across all facilities; instead, the policies varied by location.  (PFOF 10.)   After May 31, 2017, General Mills changed the bonus plans across its sites; however, Plaintiff was not employed at this time and thus did not receive any bonus under the new plan. (PFOF 11.)

Not all hourly, non-exempt production employees in the United States received Wage Incentive Bonuses for various reasons, including (1) some Production Facilities did not adopt any hourly incentive policy or chose not to offer one during a given year; (2) some Production Facilities have unionized workforces whose pay is determined by a Collective Bargaining

Agreement; (3) some Production Facilities were closed down during various times from March 2, 2015 to March 2, 2018. (PFOF 12.)

For example, non-exempt production employees in three Production Facilities – Buffalo, New York; Cincinnati, Ohio; and Martel, Ohio – did not receive a Wage Incentive Bonus from March 2, 2015 to March 2, 2018 because the Production Facility did not adopt an Hourly Incentive Plan. (PFOF 13.) Likewise, the Buffalo, New York Mill did not use an Hourly Incentive Plan in fiscal year 2015 or 2018. (PFOF 14.) Similarly, the Production Facility in West Chicago, Illinois did not have an Hourly Incentive Plan in 2016, 2017 or 2018. (PFOF 15.) Finally, the Lodi, California; Methuen, Massachusetts, New Albany, Indiana; and Vineland, New Jersey plants closed during fiscal year 2017 and thus did not use the wage incentive program during that year. (PFOF 16.)

Likewise, even in those facilities where a Wage Incentive Bonus was paid during the relevant time period, the facilities adopted different Hourly Incentive Programs with different factors and considerations – there is not one standard program that addresses the payment of bonuses to all non-exempt production employees nationwide during the relevant time period. (PFOF 17.) Instead, the programs were administered locally, whereby each Production Facility decided on its own whether it would pay a Wage Incentive Bonus. (PFOF 18.) On a broad level, however, the local, site-specific plans considered eligible earnings, which included any overtime earnings, multiplied by a percentage multiplier, along with various other site-specific criteria, or offered a lump sum bonus payout, which was then recalculated into the regular rate for overtime purposes. (PFOF 20.)

4

### C. General Mills' Milwaukee Production Facility Has Its Own Hourly Incentive Program.

From March 2, 2015 to May 31, 2017, the Milwaukee Production Facility where Plaintiff worked used the Milwaukee "Hourly Incentive Program ("HIP")" to award biannual Wage Incentive Bonuses to its non-exempt production employees. (PFOF 21.) Thereafter, the Milwaukee Production Facility changed its plan, but Plaintiff was not employed at this time and thus did not receive any bonus under the new plan. (PFOF 22.) The Milwaukee Wage Incentive Bonus is not a lump sum, but rather an amount obtained by considering an employee's eligible earnings along with various other factors including the facility's performance, the employee's individual performance, and other ratings including plant and cell ratings. (PFOF 23.) Individual ratings were determined through the performance appraisal process, which assesses individual accomplishments against goals and objectives for the year and demonstrated behaviors. (PFOF 24.) These factors are all considered in order to obtain a standard multiplier. (PFOF 25.) This multiplier is then applied to an employee's "eligible earnings." (PFOF 26.) An employee's "eligible earnings" include both straight time and overtime pay. (PFOF 27.)[1] Because of General Mills' fiscal year, which runs from June 1 through May 31, it issues a mid-year check in late December based on earnings from June through November. (PFOF 29.) Then, it issues a year-end check at the end of the fiscal year in July. (PFOF 30.)

Pursuant to the Milwaukee HIP, after six months, an employee receives a Mid-Year Wage Incentive Bonus payment based on a standard 2.5% multiplier, a 1.2 average individual rating, year-to-date cell and plant performance and the employee's total earnings during the first six months of the fiscal year. (PFOF 31.) In June, at the end of the fiscal year, an employee's

---

[1] "Eligible earnings" also include holiday pay, which, under federal law is not required to be considered in calculating a percentage bonus. (PFOF 28); 29 U.S.C. § 207(e). As such, General Mills' percentage bonus policy is actually more generous than required.

total earnings are multiplied by the standard 2.5% and then by cell, plant, and individual performance. (PFOF 32.) As was true with the December payment, earnings for the June payment include both straight time and overtime pay before taxes. (PFOF 33.) This payment is paid in early July and is based on earnings from the entire fiscal year. (PFOF 34.) The December mid-year payment is then subtracted from the June payout to determine the final incentive payment for the year. (PFOF 35.)

Under the Milwaukee HIP, the formula to calculate a Wage Incentive Bonus is:

**TOTAL EARNINGS (INCL. STRAIGHT TIME AND OVERTIME)** *x* **2.5%** *x* **PLANT RATING**

*x* **CELL RATING** *x* **INDIV. RATING**

(PFOF 36.)

So, for example, if an employee earns $40,000 a year (including all straight time and overtime earnings) a Mid-Year Wage Incentive Bonus payment would be calculated as follows:

$20,000 Total Earnings *x* 2.5% Multiplier *x* 1.4 Plant Rating *x* 1.2 Cell Rating *x* 1.2[2] Average Individual Rating = $1,008 Mid-Year Wage Incentive Bonus Payment.

(PFOF 37.)

The Annual Wage Incentive Bonus would be calculated as follows:

$40,000 Total Earnings *x* 2.5% Multiplier *x* 1.8 Plant Rating *x* 1.48 Cell Rating *x* 1.3 Individual Rating = $3,463 Annual Wage Incentive Bonus Payment.

(PFOF 39.)

Then, because the employee has already received $1,008 of their Annual Wage Incentive Bonus, that amount is subtracted from the total, and the employee is paid $2,455 (i.e., $3,463-$1,008). (PFOF 40.)

---

[2] The Milwaukee plant used the 1.2 performance rating as a placeholder to signify an average rating at midyear because annual ratings were not completed by this time. (PFOF 38.)

**D.**     **Plaintiff Received Wage Incentive Bonuses Consistent With The Milwaukee HIP.**

Plaintiff, John Weninger, was a non-exempt Training Coordinator at the Milwaukee Production Facility. (PFOF 41.) Training Coordinators are responsible for training processes that help employees develop technical mastery and overall employee growth, ultimately improving individual and organizational performance at the Milwaukee Production Facility. (PFOF 42.) As a non-exempt production employee, Plaintiff was paid an hourly rate of pay and also received certain incentive pay, including a Wage Incentive Bonus pursuant to the Milwaukee HIP. (PFOF 43.)

In his Motion, Plaintiff admits that his Wage Incentive Bonus was paid by using a formula that was both unique to the Milwaukee Production Facility and was a percentage of his total earnings. (PFOF 44.) He correctly notes: "The formula, as I understood it, was calculated by <u>multiplying my year-to-date earnings, including regular and overtime pay, by our Milwaukee, Wisconsin plant's performance rating, our cell's performance rating, and my own personal performance rating.</u>" (PFOF 45.)

Under the Milwaukee HIP, in 2015, Plaintiff received a $2,179.93 Annual Wage Incentive Bonus, and in 2016 he received a $3,209.92 Annual Wage Incentive Bonus[3], paid out biannually in the following incentive payments during the relevant time period:

---

[3] There is no dispute about the formula used to calculate Plaintiff's bonuses. However, Plaintiff's Motion identifies his bonuses by calendar year, which is inconsistent with General Mills's fiscal year that begins on June 1 and ends on May 31 of each year. For the convenience of the Court and consistent with Plaintiff's Motion, Defendant has set forth Plaintiff's bonuses by calendar year, instead of fiscal year, for these purposes. (Jaehnig Dec. ¶ 10.)

| | |
|---|---|
| July 2015 | $1,290.27 |
| December 2015 | $889.66 |
| July 2016 | $1,748.54 |
| December 2016 | $1,461.38 |

(PFOF 46.)

Plaintiff's Wage Incentive Bonuses were calculated consistent with the Milwaukee HIP as follows:

**FY2015**

- $19,541.16 Total Earnings *x* 2.5% *x* 1.3 Plant Rating *x*1.103 Cell Rating *x* 1.2 Individual Rating = $840.60 Mid-Year Wage Incentive Bonus Payment

- $48,191.41 Total Earnings *x* 2.5% *x* 1.45 Plant Rating *x*1.22 Cell Rating *x* 1.0 Individual Rating = $2,130.87 Annual Wage Incentive Bonus Payment

- $2,130.87 (Annual) - $840.60 (Mid-Year Wage Incentive Bonus Payment) = $1,290.27

(PFOF 47(a).)

**FY2016**

- $27,475.43 Total Earning *x* 2.5% *x* 1.25 Plant Rating *x* 0.91 Cell Rating *x* 1.2 Individual Rating = $889.66 Mid-Year  Wage Incentive Bonus Payment

- $58,939.16 Total Earnings *x* 2.5% *x* 1.45 Plant Rating *x* 1.18 Cell rating *x* 1.05 Actual Individual Rating = $2,638.21 Annual Wage Incentive Bonus Payment

- $2,1638.21 (Annual) - $889.66 (Mid-Year Wage Incentive Bonus Payment) = $1,748.54

(PFOF 47(b).)

**FY2017**

- $31,408.82 Total Earnings *x* 2.5% *x* 1.11 Plant Rating *x* 1.40 Cell Rating *x* 1.2 Average Individual Rating = $1,461.38

(PFOF 47(c).)

8

Plaintiff admits, and his wage statements attached to his Motion confirm, that the Wage Incentive Bonus payments applied the percentage multiplier to Plaintiff's Total Earnings, which included his straight time and overtime earnings.  (PFOF 48.)

**E.     Plaintiff's Motion And Declaration Shows That The Wage Incentive Bonus Complies With The Law.**

In support of his Motion, Plaintiff submits excerpts from two depositions and his own declaration.  (*See* Dkt. 17-19.)  Plaintiff provides no support from any other individual in any other production position from any other production facility.  (*Id*.)  Although Plaintiff initially describes the bonus as a "lump sum," throughout his Motion and supporting declaration, Plaintiff reaffirms that his bonus was calculated as a percentage of his total income, consistent with Milwaukee HIP and federal law:

- "Defendant also had an established formula or equation that determined the specific amount of all Production Employee's wage incentive bonuses, including the following generally known and broadly accepted criteria: eligible earnings for the year <u>including base pay and overtime</u>…" (Dkt. 19 at p. 5) (emphasis added).

- "Overtime pay is based off their hourly rate, and the bonus is based off of their <u>annual earnings times this percentage</u> that we get from the formula to kick out a number for their bonus." (Dkt. 19 at p. 5-6) (citing Deposition of Chris Julian 102:2-23) (emphasis added).

- "I further understood that the amount of my Wage Incentive Bonus was based upon a fixed formula. The formula, as I understood it, was calculated <u>by multiplying my year-to-date earnings, including regular and overtime pay</u>, by our Milwaukee, Wisconsin plant's performance rating, our cell's performance rating, and my own personal performance rating." (Dkt. 19, Weninger Decl., ¶ 8) (emphasis added).

Accordingly, there is no dispute about how Plaintiff's Wage Incentive Bonus was calculated.[4]

---

[4]  Based on these undisputed facts, General Mills is also seeking summary judgment dismissal of Plaintiff's FLSA claim.

## III. THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY PLAINTIFF'S MOTION.

### A. Plaintiff Bears The Burden Of Presenting Sufficient Evidence To Support Conditional Certification.

Plaintiff fails to carry even his modest burden of showing that the court should exercise its discretion to conditionally certify, and issue notices to potentially 7,200 putative collective members nationwide.[5] At the conditional certification stage, Plaintiff must show that he is similarly situated to the individuals covered under the proposed collective definition, and he also must identify a specific common policy or practice of defendants that caused the alleged FLSA violations at issue. *See Ruiz v. Serco, Inc.*, No. 10-CV-394-BBC, 2011 WL 7138732, at *4 (W.D. Wis. Aug. 5, 2011).

While Plaintiff's burden at this stage is "not a high one," Plaintiff must nonetheless make "a modest factual showing" sufficient to demonstrate that there is "some factual nexus" that connects him to the class he seeks to represent. *Sjoblom v. Charter Communications, LLC*, No. 3:07-cv-0451-bcc, 2007 WL 4560541, at *8 (W.D. Wis. Dec. 19, 2007). "Though lenient, the 'modest factual showing' standard is not a mere formality." *Boyd v. Jupiter Aluminum Corp.*, No. 2:05-CV-227PPSAPR, 2006 WL 1518987, at *3 (N.D. Ind. May 31, 2006) (*citing Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045-46 (N.D. Ill. 2003) (evidence of defendant's payment practice concerning two out of 50 employees without more did not provide modest factual showing that employer had a common policy or plan to violate the FLSA)); *Cason v. Vibra Healthcare*, No. 10 -10642, 2011 WL 1659381, at *3 (E.D. Mich. May 3, 2011) ("Although the standard for granting conditional certification is lenient, it is not non-existent."); *Calverley v. Careerbuilder, LLC*, No. 13-C-1967, 2015 WL 4450045, at *1 (N.D. Ill. July 20, 2015) (denying conditional certification); *Velez, et al. v. Longhorn Steaks, Inc.*, No. 12-C-5847,

---

[5] (*See* PFOF 49.)

2012 U.S. Dist. LEXIS 183449, at *11 (N.D. Ill. Dec. 21, 2012) (conditional certification is "not a mere formality").

The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that he is similarly situated to the potential class plaintiffs. *See Sjoblom v. Charter Communications, LLC*, No. 3:07-cv-0451-bcc, 2007 WL 4560541, at *7-8 (W.D. Wis. Dec. 19, 2007). A plaintiff must also establish that "the putative class members [are] the '***victims* of a single decision, policy, or plan[.]**'" *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 940 (D. Minn. 2009) (italics in original, bold added, quoting *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp.2d 1181, 1186 (D. Minn. 2007)). Finally, in this district, courts have required that the plaintiff also show that "that a substantial number [of the putative members] likely have an interest in joining the litigation." *Pecor v. N. Point EDC Inc.*, No. 16-C-1263, 2017 WL 3723600, at *3 (E.D. Wis. June 9, 2017). Plaintiff does none of the above.

Instead, Plaintiff emphasizes the "leniency" of "notice stage" certification (without the benefit of discovery), urging this Court to certify a collective action regardless of whether, ultimately, this case could be tried on a representational basis or whether any member has a valid claim. But Plaintiff's burden to make some factual showing at this stage serves as an important and functional step in the certification process. Where the plaintiff has not made at least a modest factual showing that certification is appropriate, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wisconsin Bell, Inc.*, Case No. 08-C-280, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008) (denying motion because plaintiffs have not made a sufficient factual

Case 2:18-cv-00321-JPS   Filed 07/13/18   Page 11 of 24   Document 20

showing that they and the putative class members were similarly situated as victims of a common illegal practice); *see also Veerkamp v. US. Sec. Assocs., Inc.*, No. 1:04-CV-0049DFH-TAB, 2005 WL 775931, at *2 (S.D. Ind. Mar. 15, 2005) ("The court is not persuaded that this level of evidentiary support is sufficient to launch a nationwide class."). And "[b]ecause a plaintiff's 'discovery demands upon conditional certification may impose a tremendous financial burden to the employer,' courts must be careful to guard against wasting the parties' time and resources where certification is not appropriate at the outset." *Pecor v. N. Point EDC Inc.*, No. 16-C-1263, 2017 WL 3723600, at *3 (E.D. Wis. June 9, 2017).

> **B.     Plaintiff Has Not Met His Burden Of Showing That He Is Similarly Situated To The Putative Collective Because He Fails To Identify A Common Policy Or Practice That Violates The FLSA.**

Plaintiff's failure to allege a cognizable legal violation of the FLSA is fatal to his request for conditional certification. Plaintiff must establish that he is similarly situated to the purported collective members because they are "**victims of a single decision, policy, or plan**." *Saleen*, 649 F.Supp.2d at 939-40 (emphasis added). In order to be such "victims," Plaintiff and the putative class "must be harmed by an *unlawful* companywide policy." *Id*. (emphasis in original).; *see also Adair*, 2008 WL 4224360, at *12 (reviewing the merits of Plaintiff's claim and finding that they had not made a sufficient factual showing that they and the putative collective were similarly situated as victims of a common illegal policy). Here, Plaintiff's Motion must be denied because neither Plaintiff nor any putative collective member is a victim of any illegal policy.

Plaintiff's theory is that General Mills violated the FLSA because it "failed" to include Wage Incentive Bonuses in production employees' regular rates of pay when determining overtime compensation due to them. Plaintiff is mistaken. Plaintiff's bonus was calculated as a percentage multiplied by his total earnings (straight time and overtime pay before taxes), and

therefore, consistent with 29 CFR § 778.210, no re-computation of employees' regular rates of pay was required.

Under the FLSA, 29 U.S.C. § 201 et seq., covered employers must pay non-exempt employees overtime for all hours worked in excess of 40 in each workweek. 29 U.S.C. § 207. Overtime is paid at the rate of one and a half times the employee's "regular rate" of pay per hour. *Id*. In determining the employee's regular rate of pay, the employer must include "all remuneration for employment" paid to the employee, with very limited exceptions. 29 C.F.R § 779.18. Because they are considered "remuneration for employment," when non-exempt employees are paid certain bonuses, those bonuses must be included in an employee's overtime rate of pay, and thus, the employer must recalculate the "regular rate" usually at the time the bonus is paid. *See* 29 C.F.R. § 778.209.

The U.S. Department of Labor's regulations interpreting and applying the FLSA provide that a percentage bonus functions to increase all of an employee's compensation, including both straight time and overtime, for the period of time over which the bonus was earned. *See* 29 C.F.R. §§ 778.210; 778.503. By taking a percentage of an employee's total earnings including overtime, a percentage bonus accomplishes the same result as if an employee had been paid the higher rate of pay, including appropriate overtime premiums, from the beginning of the bonus period. *Id*. As such, if an employer has a percentage bonus plan, it does not need to do any recalculation of additional overtime premiums. *Id*.; DOL WH Opinion Letter (January 5, 2018) (re-issuing previously withdrawn opinion letter finding a percentage bonus lawful, without any further calculation of overtime premiums on the bonus, and providing guidance regarding what types of compensation must be included in the calculation); DOL WH Opinion Letter (February 17, 2006) (finding a percentage bonus lawful method of paying overtime where the same

predetermined percentage is applied to the employee's straight time).  In short, a percentage bonus accomplishes in one mathematical step an increase in the regular rate and a corresponding increase in the amount of overtime paid.  29 C.F.R. §§ 778.210; 778.503.  Therefore, contrary to Plaintiff's argument, a percentage bonus is not excluded from the regular rate of pay, but is a simple, mathematical method by which an employer can incorporate a bonus and the applicable overtime into the regular rate in one step.[6]  *Id.*

Here, Plaintiff's Wage Incentive Bonus payment under the Milwaukee HIP satisfies the conditions set forth in 29 C.F.R § 778.210 as the percentage is applied to Plaintiff's *total earnings*, including both straight time and overtime compensation.  (*See* PFOF 27, 33, 36, 48; Dkt. 19, Weninger Decl. ¶ 8)  Bonus payments under the Milwaukee HIP thus automatically include all overtime pay due under the FLSA and, therefore, no additional compensation or payment of overtime is required.  There is no violation of law here.  Accordingly, because Plaintiff has failed to identify any potentially illegal policy or practice that applied to either him or any of the putative class members he seeks to represent, the Court should deny his motion to conditionally certify his FLSA claims and send notice of this lawsuit to potentially 7,200 production employees who, similarly, have no valid claims under the FLSA.  *Saleen*, 649 F.Supp.2d at 939-40; *Adair*, 2008 WL 4224360, at *12.

---

[6] For example, assume an employee is paid $10 an hour for 2,080 straight time hours in a year and is paid for 208 overtime hours in a year.  The employee's total compensation is $23,920 (2,080 hours x $10 per hour) + (208 hours x 1.5 x $10 per hour).  If an employee is paid a 10% percentage bonus, the employee's bonus will be $2,392 (2,080 hours x $10 per hour x 10%) + (208 hours x 1.5 x $10 per hour x 10%).  The total of the original compensation and the percentage bonus is $26,312.  This is the same amount that would result if the employee had been paid $11 an hour from the commencement of the bonus (2,080 hours x $11 + 208 hours x 1.5 x $11) = $26,312.

### C. Plaintiff Fails To Show That He Is Similarly Situated To Non-Exempt Production Employees At All Production Facilities Nationwide Because The Putative Collective Members Were Not All Eligible For The Same Percentage Bonus As Plaintiff.

To avoid the glaring evidentiary shortcomings discussed above, Plaintiff discusses the conditional certification standard as if it were a mere formality. However, as courts in this District have recognized, Plaintiff is not entitled to conditional certification of his FLSA claim when he not only fails to identify a potential common violation of the law, but also fails to establish that he and the putative collective he seeks to represent were even subject to the same bonus plan that he incorrectly claims violated the law. *See, e.g. Pecor*, 2017 WL 3723600, at *3 (E.D. Wis. June 9, 2017) ("Though the conditional certification at the first stage is a lenient standard, it is not a 'mere formality.'"). Indeed Plaintiff — relying solely on scant testimony from two depositions and his own declaration— has failed to meet his burden of even a "modest factual" showing.

### 1. Plaintiff's Declaration Does Not Establish That He Was Similarly Situated To The Putative Collective.

Plaintiff cannot rely on his own vague and conclusory declaration testimony to establish that: (a) he and other hourly employees at other General Mills' facilities were paid Wage Incentive Bonuses; and (b) those bonuses were based on the same criteria; and (c) those bonuses were paid using the same formula. (Plaintiff's Declaration, Dkt. 19, at ¶¶ 13-14, 22-23, 27-28, 30-31). *See Boyd v. Alutiiq Glob. Sols., LLC*, No. 11-cv-0753, 2011 WL 3511085, at *4 (N.D. Ill. Aug. 8, 2011) (quoting *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007) (Plaintiff "cannot rely on [his] allegations alone to make the required "modest factual showing" of a common bonus policy for purposes of conditional certification). The Court in *Boyd* specifically recognized,

> The fact that the standard is a "lenient" one and that
> Plaintiffs' burden is "modest" at this stage means that
> Plaintiffs need only present a minimal amount of evidence
> to show the existence of persons who are similarly situated;
> it does not mean that Plaintiffs can meet that burden with
> vague, uncorroborated, conclusory hearsay. *Some* evidence
> is required.

*Boyd*, 2011 WL 3511085, at *6 (emphasis in original) (finding generic declarations stating that alleged unlawful practices were the same for all similarly situated employees of defendant were insufficient to satisfy plaintiffs' burden; therefore, conditional certification denied). Many courts in the Seventh Circuit follow this sound approach. *See, e.g., Lallathin v. Ro Ro, Inc.*, No. 1:09-CV-1293-WTL-DML, 2010 WL 2640271, at *2 (S.D. Ind. June 28, 2010) (denying conditional certification and finding plaintiff's declaration stating that other employees told him they were similarly required to work overtime without pay was insufficient); *Sjoblom v. Charter Commc'ns, LLC*, No. 07-CV-0451, 2007 WL 4560541, at *9-10 (W.D. Wis. Dec. 19, 2007) ("An affiant must testify about what he observed himself and not speculate about what he thinks happened") (*citing Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)).

Here, Plaintiff seeks to rely on his own vague, uncorroborated, and conclusory testimony that he was "personally aware that other Production Employees, both at our Milwaukee, Wisconsin facility and at General Mills' other facilities, received a Wage Incentive Bonus . . ." (Plaintiff's Declaration, Dkt. 19, at ¶¶ 13, 22, 27, 30).[7] As the *Boyd* court recognized, an allegation that Plaintiff is "personally aware," without more, is insufficient to show commonality. *See Boyd*, 2011 WL 3511085, at *6 (finding similar statements in declarations failed to meet even modest standard for conditional certification where Plaintiffs did not

---

[7] Notably, elsewhere in his declaration, Plaintiff admits that the bonus plan he was paid under was unique to the Milwaukee Production Facility. (Dkt. 19, Weninger Decl. ¶ 8.) ("The formula was calculated by multiplying my year-to-date earnings, including regular and overtime pay, by our Milwaukee, Wisconsin plant's performance rating, our cell's performance rating, and my own personal performance rating.") (emphasis added).

"identify to whom they spoke, when those conversations occurred, where they occurred, or what specifically was discussed that would lead them to conclude that pay practices were 'consistent'). Per *Boyd*, *Lallathin*, and *Sjoblom*, Plaintiff cannot meet his burden to present a "modest factual showing" that he is similarly situated to the putative collective with this vague and conclusory testimony.

> **2.      The Evidence Reflects That Plaintiff Is Not Similarly Situated To The Putative Collective Members Because The Putative Collective Was Not Eligible For The Same Wage Incentive Bonus As Plaintiff.**

Notably, Plaintiff offers no other evidence to show that employees in other production facilities were eligible for the same Wage Incentive Bonuses as he was.  As discussed in more detail above, the evidence confirms that some facilities did not pay Wage Incentive Bonuses at all (because they had not adopted such a policy, they were covered by a Collective Bargaining Agreement or they closed down at some point during the relevant time period). (PFOF 12-16.) Thus, a significant number of employees whom Plaintiff seeks to represent did not even receive Wage Incentive Bonuses. Further, to the extent Wage Incentive Bonuses were paid from May 2, 2015 through May 31, 2017, each General Mills production facility used different formulas and based the bonuses on different criteria.  (PFOF 19.)  After May 31, 2017, General Mills changed the bonus plans across its sites; however, Plaintiff was not employed at this time and thus did not receive any bonus under the new plan.  (PFOF 22.)

Because different Hourly Incentive Programs applied to putative collective members who worked in different Production Facilities through May 31, 2017, and because Plaintiff did not receive any bonus after that time, Plaintiff has not identified a "factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws."  Thus, Plaintiff has failed to meet his burden required for first-step certification.  *See Molina*, 556 F. Supp. 2d at 787 (emphasis added); *see also, e.g., Ruiz v. Serco, Inc.*, No. 10-CV-394-BBC, 2011 WL 7138732, at

*10 (W.D. Wis. Aug. 5, 2011) (denying conditional certification under the FLSA where Plaintiffs' evidence did not support a finding they were similarly situated to the potential class members regarding job duties or the policy defendant used to determine whether they should be classified as exempt). This Court should deny conditional certification and should not impose on Defendants the "tremendous financial burden" of discovery demands that follow conditional certification. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982).

### D. Plaintiff Has Failed To Provide Any Evidence That Others Are Interested In This Litigation.

Further, Plaintiff provides no evidence that any other putative member is interested in opting into this litigation. This is not surprising given that Plaintiff challenges a policy that does not apply to most of the putative collective members, and is legal on its face and in its application. In fact, many courts, including this Court, have required Plaintiffs to demonstrate "that other employees desire to opt-in to this litigation." *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276-77 (M.D. Ala. 2004) (citing *Dybach*, 942 F.2d at 1567-68). Only if Plaintiff can demonstrate the requisite level of interest does the Court move on to analyze "similarly situated" or manageability. *See Pecor v. N. Point EDC Inc.*, No. 16-C-1263, 2017 WL 3723600, at *3 (E.D. Wis. June 9, 2017)

Here, only the named Plaintiff has opted in to the litigation, out of a potential nationwide collective of approximately 7,200 employees. Courts routinely refuse to authorize notice when a plaintiff's showing evidences such a minor percentage of the potential class. *See Pecor*, 2017 WL 3723600, at *3; *West v. Border Foods, Inc.*, No. 05-2525, 2006 WL 1892527 (D. Minn., July 10, 2006) (denying certification where plaintiffs submitted evidence of alleged off-the-clock work for only 2.5% of the class); *see Robinson v. Dolgencorp*, No. 5:06-cv-122-Oc-10GRJ, 2006 U.S. Dist. LEXIS 85471, at *18-19 (M.D. Fla. 2006) (denying certification in a case involving

350,000 potential class members when plaintiff only provided affidavits for herself and two co-workers); *Rodgers v. CVS Pharmacy*, No. 8:05-CV-770-T-27MSS, 2006 U.S. Dist. LEXIS 23272, at *4 (M.D. Fla. 2006) (declarations from three employees did not justify notice to 250,000 class members); *Slaughter v. CVS RX Servs., Inc.*, No. CV03-CO-01403-S, 2004 U.S. Dist. LEXIS 30034, at *11-12 (N.D. Ala. 2004) (denying certification of a national class where two affidavits stated "beliefs" that other individuals would join); *H&R Block v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (unsupported allegations of widespread FLSA violations by two plaintiffs insufficient); *see also Mackenzie v. Kindred Hosp. East, LLC*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (rejecting argument that notice must be provided in order to determine whether there are others who may desire to join the case). Given that Plaintiff is the only person to express any interest in this lawsuit, his motion for conditional certification should be denied.

E.     **The Court Should Reject Plaintiff's Proposed Notice Forms And Procedures.**

Plaintiff has appended a proposed Notice of Pendency of Lawsuit ("Notice") to his Motion, which Plaintiff desires to circulate to any conditionally certified class. If the Court conditionally certifies any class and authorizes the distribution of notice — which Defendant opposes — then it should exercise its discretion to either require the Parties to meet and confer regarding a revised Notice and Opt-In Form or, at the minimum, require modification as follows.

1.     **The Court Should Not Order The Disclosure Of Employees' Private Information To Facilitate Notice.**

The preferred method of informing potential litigants regarding a pending wage and hour case has been by first-class mail. *See Hinterberger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 U.S. Dist. LEXIS 97944 (W.D.N.Y., October 21, 2009) (collecting cases). The names and last known addresses for Production Employees in the Milwaukee Production Facility in the last

three years is all that is required to facilitate notice; General Mills should not be compelled to produce more information, especially private personnel data, regarding these current or former employees. Certainly, the subjects of this data have a legitimate interest in the protection of private identifying information such as birthdates, and they had no reason to expect that it would be provided to a private law firm when the data was disclosed to General Mills as part of its personnel or benefits processes. Plaintiff has made no showing that last known addresses will be insufficient to provide reasonable notice to the class, and therefore, his requests for the birthdates — or any other sensitive identifying information — regarding former co-workers should be denied. *See Calderon v. GEICO General Insurance Company*, No. RWT 10cv1958, 2011 U.S. Dist. LEXIS 2815, at *25 (D. Md., January 12, 2011) ("[G]iven the privacy interests of GEICO employees, this Court will not order GEICO to produce any information regarding the Social Security numbers or dates of birth of potential opt-in plaintiffs.").

### 2. Plaintiff Is Not Entitled To Phone Numbers Or Email Addresses.

The Court should not order General Mills to produce email addresses and telephone numbers of current and former production employees even if their mail notices are returned. This private and personal information requested by Plaintiff typically is not provided to plaintiffs in FLSA actions. *See Aguilar v. Complete Landsculpture, Inc.*, No. 3:04-CV-0776-D, 2004 U.S. Dist. LEXIS 20265, at *17-18 (N.D. Tex. Oct. 7, 2004) (denying Plaintiff's request for putative plaintiffs' telephone numbers because the highly personal information about persons who may in fact have no interest in the litigation should not be disclosed to Plaintiff, particularly where such data was outweighed by the privacy interests of potential class members and there was no reason to conclude that sending a letter to the last known addresses would be inadequate); *Humphries v. Stream Int'l, Inc.*, No. 3:03-CV-1682-D, 2004 U.S. Dist. LEXIS 20465, at *12 (N.D. Tex. Feb. 13, 2004) (court did not require the employer to disclose the telephone numbers and dates of

birth of the potential class members because any need for the disclosure was outweighed by the privacy interests of the individuals). This is particularly true because Plaintiff has provided no evidence of any co-workers who are interested in this lawsuit.

### 3. Notice Should Be Administered By A Third Party.

The court should require that a third-party administrator (to be paid by Plaintiff's counsel) send out any Court-authorized notice. Courts routinely find that using a third party administrator is the best way to effectuate notice. *See, e.g., Prentice v. Fund for Public Interest Research, Inc.,* No. C-06-7776, 2007 U.S. Dist. LEXIS 71122, at *15 (N.D. Cal. 2007) ("[U]sing a third party is the best way to ensure the neutrality and integrity of the opt-in process."); *Cannon v. Time Warner NY Cable LLC*, No. 13-cv-02521-RJ-MJW, 2014 WL 4401313, at *7 (Sept. 5, 2014) (granting defendants' request for third party administrator to be used for sending the notices, receiving the opt-in forms, and filing them with the court, where plaintiff had already allegedly solicited class members).

Further, the Court should require that opt-in Plaintiffs mail the consent form to a third party administrator or the court. Plaintiff's proposed notice requires opt-in claimants to mail the consent form to Plaintiffs' counsel. Courts regularly reject this proposed procedure. *See Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 84-85 (E.D.N.Y. 2008) ("recent decisions have held that such a provision [forwarding consent forms to plaintiff's counsel] improperly discourages class members from seeking outside counsel and thus, courts have directed Consent Forms be sent to the Clerk of Court.") (internal citations omitted); *Hallissey v. America Online, Inc.,* No. 99-CIV-3785 (KTD), 2008 WL 465112, at *4 (S.D.N.Y. Feb. 19, 2008) ("Also, both notices must instruct the former CLs to submit, any written consents to the Clerk of the Court only.") This Court should direct that any notice instruct opt-in claimants to file their consent form directly with the Court.

### 4. General Mills Should Not Be Compelled To Post Notice Of This Litigation On Its Business Premises.

Plaintiff also asks that this Court to compel General Mills to "post the Notice at its production facilities in the same areas in which it is required to post FLSA notices, as well as its employee breakrooms, if different."  (Pl. Mem., p. 14.)  Plaintiff's request should be rejected because it is simply unreasonable and unnecessary.  Moreover, an order compelling such posting would violate General Mills First Amendment right against compulsion to engage in speech with which it disagrees.

As noted above, first-class mailing of notice is the preferred method, and courts hold that alternative forms of notification (such as a workplace posting) should not be ordered unless the plaintiff presents facts showing that alternative methods are necessary.  *See Morris v. R.A. Popp*, No. 8:11CV263, 2012 U.S. Dist. LEXIS 19273, at *18-19 (D. Neb., January 20, 2012) ("plaintiff provides no justification for posting the notice."); *Martinez*, 265 F.R.D. at 500 ("There is no evidence personal mailing will be an unreliable means of delivering notice to the putative plaintiffs[,]" collecting cases); *see also Shajan v. Barolo*, Ltd., No. 10 Civ. 1385 (CM), 2010 U.S. Dist. LEXIS 54581, at *5 (S.D.N.Y. June 2, 2010).

Here, there is no such need. The only group likely to be reached by a posting is current employees; however, General Mills will be able to provide accurate mailing addresses for current employees, making such posting at the place of business unnecessary.  *See Shajan*, 2010 LEXIS 54581, at *5 ("Since all current employees will be receiving the notice [via first class mailing], there is no need to require defendants to post the notice in the workplace.").  Posting notice is simply unnecessary and Plaintiff's request should be denied.

Plaintiff's request that General Mills post notice on its business premises must also be rejected because such an order would violate General Mills' First Amendment rights.  The

United States Constitution safeguards not only the right to speak, but also protects against compulsion to disseminate a message with which one disagrees. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (First Amendment guarantee "includes both the right to speak freely and the right to refrain from speaking at all."). In *Pac. Gas & Elec. Co. v. Pub. Util. Comm'n*, 475 U.S. 1, 15 (1986), the Supreme Court held that requiring a litigant to include its adversary's views in its billing, "impermissibly requires [the litigant] to associate with speech with which [the litigant] may disagree."

Posting notice on General Mills business premises unnecessarily requires General Mills to disseminate a message to persons outside the putative class and with which it disagrees. Although such a right is not absolute, Supreme Court precedent requires that any order burdening the exercise of free speech must be narrowly tailored to serve a compelling state interest. *Id.* at 19. Posting notice is certainly not narrowly tailored because it would be broadcast to many more individuals than is necessary (i.e., non-collective members employed at the production facility).

### 5. The Proposed Notice Form Must Be Modified.

The Notice must be amended to inform putative collective action members of their right to consult any attorney that they choose. Plaintiffs must provide notice to potential opt-in collective action members that is "timely, accurate, and informative." *See Hoffmann-La Roche Inc. v. Richard Sperling et al*, 493 U.S. 165 ,172 (1989). Among the rights that potential collective action members should be advised of is their right to be represented by an attorney other than class counsel. *See Tolentino v. C & J Spec-Rent Servs.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010). Indeed, any notice should not direct putative class members to contact class counsel (as Plaintiff's proposed Notice does) but, instead, "must inform potential class [p]laintiffs that they may contact any attorney of their choosing to discuss the case." *Id.* Accordingly, the Notice must be modified.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Conditional Class Certification and Court-Authorized Notice. The facilitation of Section 216(b) collective actions must be balanced against the long-standing and well-founded judicial concern about wasting the parties' time and resources where certification is not appropriate at the outset. Plaintiff's effort to justify nationwide notice to current and former non-exempt production employees of varying positions and practices clearly falls far short of even the "fairly lenient" standard of proof required here. Plaintiff's motion should be denied in its entirety.

Dated:  July 13, 2018

*s/Shanthi V. Gaur*
Sofija Anderson (WI SBN: 1041498)
**LITTLER MENDELSON, P.C.**
111 East Kilbourn Avenue; Suite 1000
Milwaukee, WI 53202
Telephone: 414.291.5536
Facsimile:  414.291.5526
E-mail:  sanderson@littler.com

Shanthi V. Gaur  (SBN: 06224996)
**LITTLER MENDELSON, P.C.**
321 North Clark Street; Suite 1000
Chicago, IL 60654
Telephone: 312.372.5520
Facsimile:  312.372.7880
E-mail: sgaur@littler.com

**ATTORNEYS FOR DEFENDANT**
