# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOHN WENINGER,<br><br>      Plaintiff,<br><br>v.<br><br>GENERAL MILLS OPERATIONS LLC,<br><br>      Defendant. | Case No. 18-CV-321-JPS<br><br><br><br>**ORDER** |

Plaintiff John Weninger ("Weninger") filed this action on March 2, 2018, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, against his former employer, Defendant General Mills Operations LLC ("General Mills"). (Docket #1). Weninger seeks to bring his FLSA claim on a class basis, which in the parlance of the FLSA is called a collective action. *See* 29 U.S.C. § 216(b). On June 22, 2018, he filed a motion for conditional certification of his FLSA claim as a collective action. (Docket #16). General Mills opposes the motion and filed its own motion for summary judgment as to the FLSA claim. (Docket #21). Both motions are fully briefed and, for the reasons stated below, General Mills' motion will be denied without prejudice and the proposed collective action will be conditionally certified.

1.  **BACKGROUND**

  The basic facts are undisputed. General Mills manufactures consumer food products. It operates nearly thirty production facilities across the country, including one in Milwaukee, Wisconsin, where

Weninger worked. He was employed as a Training Coordinator, which is a non-exempt, hourly position for FLSA purposes.

In addition to their regular, hourly rates of pay, General Mills employees like Weninger received lump sum payments referred to as "Wage Incentive Bonuses." The bonus was determined annually and paid out in two separate payments, one in December and one in July. The Wage Incentive Bonus is calculated according to a formula established by General Mills and known to its non-exempt employees, including Weninger, in order to encourage or reward their rapid, safe, consistent, and efficient work performance. If a General Mills employee is an active, full-time employee at the time the Wage Incentive Bonus is made, he or she is entitled to receive it. The formula takes into account the employee's work performance, the production facility's performance, the safety and reliability of the facility, and other performance metrics.

The result of the Wage Incentive Bonus formula is a percentage. That percentage is multiplied by the employee's "eligible earnings" (a term used by General Mills, not the FLSA), including regular (or "straight") pay, overtime pay, and holiday pay combined. The product of that calculation is the total Wage Incentive Bonus for the year, which, as noted above, is paid in two installments. The Wage Incentive Bonus was not included in Weninger's or other employees' regular rates of pay when determining overtime compensation, for reasons that will be explored below.

Many General Mills employees enjoy another bonus, called the "Lump Sum Merit Bonus." According to General Mills, the bonus has no relation to employee productivity and is only used to adjust employee compensation based on prevailing market rates for similar work. (Docket #32 at 8). Like the Wage Incentive Bonus, the Lump Sum Merit Bonus is

calculated by applying a fixed percentage to the employee's eligible earnings—his straight time, overtime, and holiday pay combined. For instance, in 2016 eligible employees received a Lump Sum Merit Bonus of 1% of their eligible earnings. (Docket #24 ¶¶ 3–4).

## 2. ANALYSIS

### 2.1 General Mills' Compensation Structure

Conditional certification of a collective action is distinct from the procedure normally applied to class litigation under Federal Rule of Civil Procedure 23. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982). It allows a court to conditionally certify a collective action under the FLSA so that notification to putative class members may be made, those putative class members may affirmatively opt in to the collective action, and class discovery may be taken. 29 U.S.C. § 216(b); *Woods*, 686 F.2d at 579–80. Once this is done, the plaintiff can move for final, full certification of the collective action. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008). For the initial step of conditional certification, the plaintiff must only make "a minimal showing that others in the potential class are similarly situated," *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004), which requires no more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

On the face of the complaint, Weninger appears to satisfy this lenient standard. He alleges that he and other hourly, non-exempt employees at General Mills' production facilities were subject to its unlawful practice of failing to include the Wage Incentive Bonus, a non-discretionary form of remuneration, in their regular rates of pay for purposes of determining

overtime compensation. *See* (Docket #1 ¶ 46).¹ General Mills essentially concedes that the Wage Incentive Bonus should be considered part of its employees' regular rate. (Docket #22 at 8–11). But it nevertheless asserts that it should be granted summary judgment on the FLSA claim because its Wage Incentive Bonus is a permissible percentage bonus. *Id.*

Non-discretionary bonuses must normally be recomputed into an employee's regular rate before calculating his overtime compensation. 29 U.S.C. § 207(e)(3)(a); 29 C.F.R. § 778.211(c); *Gilbertson v. City of Sheboygan*, 165 F. Supp. 3d 742, 749–50 (E.D. Wis. 2016). Otherwise, an unscrupulous employer could take a portion of an employee's ordinary compensation, call it a "bonus," exclude it from the employee's regular rate, and thereby artificially deflate the employee's overtime rate of pay. In an interpretive regulation, the Department of Labor ("DOL") opines that an employer can avoid this recomputation exercise by paying a percentage bonus based on the employee's "total earnings," including all straight time, overtime, and other remuneration combined. 29 C.F.R. § 778.210.² From a mathematical

---

¹The complaint broadly alleges a failure to include "non-discretionary compensation, such as bonuses, commissions, incentives, and/or other rewards" in employees' regular rates. (Docket #1 ¶ 59). The motion for conditional certification, however, limits the claim to one bonus only, the Wage Incentive Bonus. (Docket #17 at 1).

²Weninger challenges the validity of 29 C.F.R. § 778.210 directly, arguing that it is inconsistent with the statute and should be disregarded. While the DOL's interpretive bulletins and opinion letters on percentage bonuses are not binding on the Court, Weninger offers little reason to reject the wisdom and expertise of the DOL on labor matters, which are entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1308 (10th Cir. 2011); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1268 n.5 (11th Cir. 2008); *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 940 (9th Cir. 2004). Learned Hand may have expressed a different view of percentage bonuses in 1949, *see Siomkin v. Fairchild Camera & Instrument Corp.*, 174 F.2d 289, 293–94 (2d Cir. 1949), but the Court is persuaded by the much more recent approach expressed by the

perspective, a percentage bonus under Section 778.210 achieves the same result as recomputation. Thus, percentage bonuses are permissible not because they have some independent legal justification, but because they achieve the same ultimate result for the employee.

General Mills says this is how its Wage Incentive Bonus works. (Docket #22 at 11). Weninger disagrees, arguing that the Wage Incentive Bonus is calculated based on what General Mills calls "eligible earnings," a sum that includes pay for straight time, overtime, and holidays, but excludes other portions of an employee's "total earnings," such as the Lump Sum Merit Bonus, in contravention of Section 778.210. (Docket #29 at 7–8).

The FLSA requires that an employee be compensated with overtime pay "at a rate not less than one and one-half times" the employee's regular rate for hours worked in excess of forty in a week. 29 U.S.C. § 207(a). An employee's "regular rate" includes "all remuneration for employment paid to. . .the employee," *id.* § 207(e), subject to eight statutory exemptions. *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). Payments that do not fall within an exemption "must be totaled in addition to the regular earnings of an employee" before a regular hourly rate of pay can be determined. 29 C.F.R. § 778.208. The employer bears the burden of establishing that a payment is exempt from the regular rate. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966). "FLSA exemptions are to be narrowly construed against. . .employers and are to be withheld except as to persons

---

DOL. Thus, the Court rejects Weninger's attack on Section 778.210. *See Brock v. Two R Drilling Co., Inc.*, 789 F.2d 1177, 1179–80 (5th Cir. 1986) (discussing percentage bonuses and DOL regulations).

plainly and unmistakably within their terms and spirit." *Klem v. Cty. of Santa Clara, Cal.*, 208 F.3d 1085, 1089 (9th Cir. 2000).

Weninger's argument relies on the premise that the phrase "total earnings" in Section 778.210 is equivalent to the phrase "regular rate" used in Section 207. Some courts have found that "total earnings" encompasses merely straight time and overtime, while others hold that the phrase includes all remuneration for employment, including non-discretionary bonuses, just like an employee's regular rate. *Compare White v. Publix Super Markets, Inc.*, No. 3:14–cv–1189, 2015 WL 4949837, at *18 (M.D. Tenn. Aug. 19, 2015), *with Harris v. Best Buy Stores, L.P.*, Case No. 15-cv-00657-HSG, 2016 WL 4073327, at *4–5 (N.D. Cal. Aug. 1, 2016). General Mills does not urge the Court to take a side in this dispute. It defends the Lump Sum Merit Bonus as a percentage bonus, as will be explained below. Thus, for present purposes the Court assumes that the Lump Sum Merit Bonus falls within the "total earnings" of the employee under Section 778.210.

The parties dispute how the Lump Sum Merit Bonus should be categorized and how it was treated by General Mills.[3] Like his argument about the Wage Incentive Bonus, here Weninger says that the Lump Sum

---

[3]In his reply in support of his motion for conditional certification, Weninger posited that General Mills also improperly excluded a "perfect attendance" bonus from his regular rate of pay, in addition to the Lump Sum Merit Bonus. (Docket #28 at 7). An attendance bonus undoubtedly should be included in an employee's regular rate. 29 C.F.R. § 778.211(c); *Landaas v. Canister Co.*, 188 F.2d 768, 711 (3d Cir. 1951); *Bibb Mfg. Co. v. Walling*, 164 F.2d 179, 180 (5th Cir. 1947). But Weninger did not press any argument based on an alleged attendance bonus in his response to General Mills' motion for partial summary judgment. He rests entirely on his contentions with respect to the Lump Sum Merit Bonus. *See* (Docket #29 at 12). In General Mills' reply in support of its motion, the reason becomes clear: Weninger admitted at his deposition that he did not, in fact, receive a perfect attendance bonus. (Docket #32 at 9 n.2).

Merit Bonus should be included in the regular rate because it is non-discretionary and intended to foster worker retention, 29 C.F.R. § 778.211(c), while General Mills responds that the Lump Sum Merit Bonus is calculated as a percentage bonus in exactly the same way as the Wage Incentive Bonus—that is, a fixed percentage applied to the sum of the employee's straight time, overtime, and holiday pay, (Docket #32 at 7). Thus, in General Mills' view, the Lump Sum Merit Bonus does not need to be recomputed into the employee's wage before calculating overtime, per Section 778.210. *See Harris*, 2016 WL 4073327, at *3–4.

Because percentage bonuses are legally permissible, this position has some facial appeal. Yet it should be remembered that percentage bonuses are only tolerated because they are mathematically equivalent to recomputing the bonus into the employee's regular rate. As General Mills emphasizes, a percentage bonus "is not an exclusion from regular rate requirements; rather, it acknowledges that certain types of agreements *simultaneously pay both straight time and overtime*." (Docket #32 at 11) (emphasis in original). However, allowing two percentage bonuses to exist side-by-side means that the arithmetic does not work out in this way.

Take some example figures: an employee earns $10 per hour, works 10 regular hours and 5 overtime hours, and enjoys a Wage Incentive Bonus of 10% and a Lump Sum Merit Bonus of 5%. In the absence of the bonuses, the employee's compensation is $175. If each bonus is calculated as a percentage of $175, then all three numbers are added together, the result is $201.25. If the Lump Sum Merit Bonus is recomputed into the employee's regular rate before the Wage Incentive Bonus is applied, that gives a regular rate of $10.50 per hour. The employee's compensation before the Wage Incentive Bonus is applied would be $183.75, and with the Wage Incentive

Page 7 of 17
Case 2:18-cv-00321-JPS   Filed 09/25/18   Page 7 of 17   Document 36

Bonus added, the total compensation becomes $202.13. Thus, it appears that awarding two percentage bonuses lacks the mathematical equivalence as when one is awarded, which is what Section 778.210 contemplates.

The Court's arithmetic reveals a potential flaw in General Mills' compensation structure. However, there remain avenues for the company to justify the use of the Wage Incentive and Lump Sum Merit Bonuses, including proof that the Lump Sum Merit Bonus is exempt from inclusion in an employee's regular rate. As Weninger points out in his response to General Mills' summary judgment motion, little discovery has been done on the Lump Sum Merit Bonus. That discovery will likely be critical to assessing the validity of his FLSA claim.

For that reason, the Court will grant Weninger's request for relief under Federal Rule of Civil Procedure 56(d), which permits the Court to defer ruling upon or simply deny a motion for summary judgment when the non-movant shows that essential facts are not presently available for its opposition. Fed. R. Civ. P. 56(d). Weninger has shown, through existing discovery requests and responses, as well as the affidavit of his counsel, that discovery concerning the Lump Sum Merit Bonus is incomplete. General Mills says that no further discovery is needed, given its explanation of the purpose of the bonus and the legal justification therefor, (Docket #32 at 2–4), but as should be clear from the discussion above, the story of the bonus has critical gaps which additional discovery should fill.

Most notably, General Mills' own "compensation analyst," Ella Jaehnig ("Jaehnig"), avers that the Lump Sum Merit Bonus is paid upon a "competitive rate review of Production Employee salaries to determine whether the salaries it pays are consistent with the external market." (Docket #34 ¶ 2). That sounds like a bonus "which [is] announced to

employees to induce them. . .to remain with the firm," which the DOL says must be "regarded as part of the regular rate of pay." 29 C.F.R. § 778.211(c). More information will be needed to evaluate the validity of General Mills' approach to these bonuses. At a minimum, in light of its duty to construe the facts and take inferences in Weninger's favor, *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016), the Court cannot grant General Mills summary judgment on the FLSA claim at this time.[4]

The Court will, therefore, deny General Mills' motion for partial summary judgment without prejudice. For the same reasons, the Court finds it appropriate to grant conditional certification of Weninger's proposed collective action. In light of the need to provide a notice and opt-in period for putative class members, the Court will issue an amended trial scheduling order that accommodates such a period while giving the parties an opportunity for further dispositive and final certification motion practice after the opt-in period expires.[5]

---

[4] General Mills also contends that Weninger has had sufficient time to perform the needed discovery, but at the same time it admits that it produced his pay records only two weeks before filing its motion for partial summary judgment. (Docket #32 at 3). Likewise, it identified Jaehnig as the most knowledgeable person on this topic at that time. *Id.* at 4. Because of this, the Court does not discern a lack of diligence in Weninger's failure to obtain the discovery he now seeks prior to the filing of General Mills' motion. *See H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1025 (E.D. Wis. 2018); *Pfeil v. Rogers*, 757 F.2d 850, 856 (7th Cir. 1985).

[5] For two reasons, the Court is obliged to grant conditional certification at this time without permitting additional development of the record so as to answer the legal questions posed by General Mills' motion for summary judgment. First, the class or non-class status of an action should generally be determined early in the case, before a merits ruling. *See Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 362 (7th Cir. 1987). Second, and relatedly, deciding the merits of the case before the opt-in period—assuming Weninger survived a second motion for summary judgment—would create a one-way intervention problem, enticing all putative class members to join a class whose victory is certain. *See*

## 2.2 Collective Action Scope and Notice

The Court has found General Mills' overarching legal argument to be without merit, at least on the present state of the record and the posture of the case. By the same token, Weninger has satisfied the Court, for purposes of conditional certification, that he is similarly situated to other potential members of the collective action with respect to his Wage Incentive Bonus claim. *Jirak*, 566 F. Supp. 2d at 848. What remains are the parties' disputes over various other aspects of the proposed collective action, including the scope of the action, the contents of the notice, and administration of the notice and opt-in process. The Court has discretion to prescribe the form, manner, and timing of notice to ensure that putative members receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 172 (1989).

To start, Weninger proposes the following definition for the collective action:

> All current and former hourly paid, non-exempt Production Employees who were employed by Defendant at any of its production facilities in the United States between March 2, 2015 and March 2, 2018 and who received a "wage incentive bonus" that was not included in their regular rate(s) of pay for overtime compensation purposes in workweeks when said employees worked in excess of forty (40) hours during the representative time period for which the "wage incentive bonus" covered.

---

*Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057–58 (7th Cir. 2016). This must be avoided.

(Docket #17 at 1). Weninger asks the Court to authorize the notice for putative class members he prepared and attached to his motion. *Id.* at 14; (Docket #16-1).

He proposes a 45-day opt-in period, after which he will seek full certification of the collective action. (Docket #17 at 15). To facilitate notice to putative class members, he requests that General Mills be ordered to provide his counsel with the names and last known address of all such persons within ten days, so that the notice may be sent to them by mail. *Id.* at 13. For those whose mailed notice is returned unsent, he asserts that General Mills should provide telephone numbers, email addresses, and dates of birth, to help counsel locate those individuals. *Id.* Finally, Weninger requests that the Court direct General Mills to post his proffered notice conspicuously at its production facilities during the opt-in period, in the areas where it posts other legally required notices. *Id.* at 13–14.

General Mills offers several counterarguments. First, it claims that only the Milwaukee production facility utilized the Wage Incentive Bonus Weninger describes. (Docket #20 at 3–6). Some of its facilities had different hourly incentive programs, as the programs were administered locally. *Id.* Some of these programs considered similar factors on a general level, such as multiplying eligible earnings by a percentage derived from site productivity, but the particulars of each plan differed. *Id.* Further, some incentive programs were arranged through collective bargaining agreements for facilities where the workforce was unionized. *Id.* Still other facilities had no such program at all or were closed during the relevant period. *Id.* This diversity persisted from at least the start of the class period, March 2, 2015, until May 31, 2017, when General Mills adopted a uniform

bonus plan. *Id.* Weninger had left the company in early May 2017, prior to the institution of this new plan. *Id.*

Given the discrepancies in bonus structures across production facilities, General Mills says that Weninger has not established that a sufficient number of other General Mills workers are similarly situated to him as a factual matter. *Id.* at 15–18. Weninger counters that the proposed collective action definition excludes anyone who did not receive a wage incentive bonus, which helps alleviate concerns of overbreadth. (Docket #28 at 8). Moreover, the existence of different formulae and criteria for wage incentive bonuses at different facilities is, according to Weninger, a question about calculating damages, not a question about whether General Mills' compensation structure was lawful. *Id.* at 9. The key, in Weninger's view, is that wage incentive bonuses were not recomputed into employees' regular rates for overtime purposes or were not calculated using the employees' total earnings. *Id.* at 9–10.

In this vein, General Mills faults Weninger's evidentiary submissions as conclusory and insufficient to establish that others were similarly situated to him. (Docket #20 at 15–18). The Court disagrees. While Weninger's own testimony is somewhat vague as to whether other non-exempt employees at the Milwaukee facility enjoyed similar bonuses, *see Boyd v. Alutiiq Global Solutions, LLC*, No. 11–cv–0753, 2011 WL 3511085, at *6 (N.D. Ill. Aug. 8, 2011), he has bolstered his presentation with the testimony of General Mills employees who are knowledgeable about its bonus plans across the nation, (Docket #17 at 3–6). Thus, the evidence before the Court far surpasses Weninger's own speculative musings. True, those employees testified that bonus plans were slightly different at different facilities prior to May 2017, but whether this is a fatal defect in the collective

action, (Docket #20 at 17–18), or simply a question of differing damages calculations, (Docket #28 at 9), is a question that can be reserved for the final certification phase, *Cannon v. Time Warner NY Cable LLC*, Civil Action No. 13–cv–02521–RM–MJW, 2014 WL 4401313, at *6 (D. Colo. Sept. 5, 2014). For now, the Court is satisfied that there is a sufficient factual nexus between the alleged FLSA violation and non-exempt production employees at all General Mills production facilities. *See Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 787 (N.D. Ill. 2007).

Second, General Mills argues that Weninger needed to, but did not, provide evidence that other employees desire to opt in to the litigation. (Docket #20 at 18–19). Weninger did not respond to this argument, but the argument is without merit in any event, as the purpose of providing evidence of other interested class members is to assure the Court that they exist. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 (N.D. Ala. 2004). Given the broad allegations of unlawful bonus practices across General Mills facilities, the Court is reasonably confident that putative members exist and would be interested in the litigation.

Third, General Mills disputes Weninger's proposed notification procedures. It resists giving out very personal identifying contact information or personnel data for those whose mailed notice is returned. (Docket #20 at 19–20). The Court agrees that providing the telephone numbers, email addresses, and birthdates of these persons is overly intrusive, at least at this time. Between first-class mailing and posting the notice in production facilities, sufficient initial efforts will have been made. *See Castillo v. P & R Enter., Inc.*, 517 F. Supp. 2d 440, 448 (D.D.C. 2007) (finding that discovery of member names and addresses "to be an efficient and effective means by which to reach current and former employees who

may choose to opt in to the collective action"); *Sherrill v. Sutherland Global Servs. Inc.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007) (allowing discovery of member names, addresses, and telephone numbers, but not email addresses, and finding that posting plus mailing "strikes the appropriate balance between ensuring adequate notification, while also minimizing any disturbance to [defendant's] workplace"). If Weninger believes additional methods need to be considered after mailing and posting prove insufficiently effective, he must first meet and confer with General Mills on the matter and thereafter seek the Court's authorization for permission to use alternative methods of notice the parties agree upon. *Cannon*, 2014 WL 4401313, at *7.

Fourth, General Mills asks the Court to order Weninger to pay for a third party to administer the notice and receive and file opt-in forms. (Docket #20 at 21). The Court finds that third-party administration is unnecessary in this case. While the appointment of an administrator is useful in cases where there are deep divides between the parties and their counsel, *see Cannon*, 2014 WL 4401313, at *7, General Mills does not allege that the parties' relationship or the history of FLSA collective-action litigation by Weninger's counsel raises a risk to the integrity of the opt-in process, *Prentice v. Fund for Public Interest Research, Inc.*, No. C–06–7776 SC, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007). Further, because the Court will include language apprising putative members of their right to seek their own counsel, sending opt-in forms directly to Weninger's counsel will not discourage them from that endeavor, a concern expressed in *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 84–85 (E.D.N.Y. 2008).

Fifth, General Mills chafes at the request to post the notice at its facilities, citing the usual effectiveness of mail and its First Amendment

right not to advocate for the litigation. (Docket #20 at 22–23). The Court finds that posting at General Mills' facilities is appropriate. The Code of Federal Regulations already requires the company to post a notice of employees' FLSA rights "in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4. Further, posting at the defendant's work facility is a regularly approved method of notice in FLSA collective actions. *See, e.g.*, *Castillo*, 517 F. Supp. 2d at 449; *Sherrill*, 487 F. Supp. 2d at 351; *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492–93 (E.D. Cal. 2006); *Garza v. Chi. Transit Auth.*, No. 00 C 0438, 2001 WL 503036, at *4 (N.D. Ill. May 8, 2001). Doing so will not contravene General Mills' First Amendment rights, whatever their scope in this context. *See Barajas v. Acosta*, Civil Action No. H–11–3862, 2012 WL 1952261, at *4 (S.D. Tex. May 30, 2012) (rejecting First Amendment challenge to posting FLSA collective action notice).

Finally, General Mills contends that the notice must include a line informing putative class members that they have a right to consult any attorney they choose, not only Weninger's counsel. (Docket #20 at 22–23). Weninger did not contest the proposed amendment to the notice, (Docket #28 at 10), so the Court will sustain General Mills' objection in this regard, *Tolentino v. C&J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010). Before the notice is mailed or posted, it must be amended to include the following line as the second sentence in the section "Your Legal Representation If You Join": "You have the right to consult with an attorney of your choosing to discuss this matter." Additionally, the first page of the notice should be amended to identify the case name, case number, and court, but without the appearance of a traditional case caption. Doing otherwise might suggest judicial approval of the case's merits. *See Flores v.*

*Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046–47 (N.D. Ill. 2003). Finally, for accuracy's sake, the notice should provide that it has been approved by the undersigned, not by Chief Judge William C. Griesbach.

### 3.   CONCLUSION

For the reasons stated above, the Court is obliged to deny General Mills' motion for partial summary judgment on Weninger's FLSA claim. Weninger's motion for conditional certification of his proposed FLSA collective action will be granted, and an amended trial scheduling order will be issued to accommodate the need for a notice and opt-in period. Further, the Court will summarize its findings as to the form and manner of notice below.

Accordingly,

**IT IS ORDERED** that Defendant's motion for partial summary judgment (Docket #21) be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** Plaintiff's motion for conditional certification of his FLSA collective action (Docket #16) be and the same is hereby **GRANTED in part** as stated herein; and

**IT IS FURTHER ORDERED** that the following protocols will govern the notice and opt-in period to be scheduled in the amended trial scheduling order issued contemporaneously with this Order:

(1)   Plaintiff shall amend his proposed notice in conformity with the Court's instructions herein and provide copies to Defendant's counsel for posting.

(2)   Defendant shall produce to Plaintiff's counsel, within **ten (10) days** of the date of this Order, the names and last known addresses of all

putative collective action members. Plaintiff shall thereafter promptly send the notice to these individuals by first-class U.S. mail.

(3)     Defendant shall post the notice conspicuously in its U.S. production facilities, in the areas where it posts other legally required notices, during the opt-in period.

(4)     Plaintiff's counsel shall promptly file with the Court any opt-in notices it receives from putative collective action members.

(5)     During the notice and opt-in period, the parties may engage in further discovery, including discovery relevant to the final certification of the collective action.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2018.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge