**John Weninger, on behalf of himself and all others similarly situated,**

          **Plaintiff,**

vs.

**General Mills Operations, LLC,**

          **Defendant**

Case No. 18-cv-321

      This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Plaintiff John Weninger (Weninger), individually and on behalf of the collective of individuals that he represents, and Defendant General Mills Operations, LLC ("Defendant" or "General Mills") (collectively, the "Parties").

## RECITALS

      **WHEREAS**, Weninger filed a Complaint ("Complaint") in the above styled action asserting, in part, collective claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, for the alleged failure to include certain non-discretionary compensation in the regular rates of pay for overtime compensation purposes to Weninger and similarly situated hourly paid, non-exempt production employees (the "FLSA Claim"); and

      **WHEREAS**, Weninger's Complaint also included an individual claim against Defendant under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (the "FMLA Claim") which is not being resolved under the terms of this Agreement; and

      **WHEREAS**, on September 25, 2018, the Court granted Weninger's Motion for Conditional Certification pursuant to Section 216(b) of the FLSA authorizing the issuance of notice of Weninger's FLSA claims to a conditionally certified collective of hourly paid, non-exempt production employees (*see* Dkt. No. 36), and pursuant to such notice, 436 individuals opted-into the Litigation in addition to Weninger, for a total of 437 individuals participating in the FLSA claims (collectively "Plaintiffs"); and

      **WHEREAS**, the purpose of this Agreement is to settle fully and finally the FLSA Claim asserted in the Complaint, as set forth in more detail in Section 4 of this Agreement, and those claims that could have been so asserted under the FLSA or state and local wage and hour laws with those individuals who have filed a consent to join Weninger as party plaintiff for purposes of asserting the FLSA Claim; and

      **WHEREAS**, Defendant denies all of the allegations asserted in the Complaint, and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the FLSA Claim or the FMLA Claim; nonetheless, without admitting or conceding any

liability or damages whatsoever, Defendant has agreed to settle the FLSA Claim on the terms and conditions set forth in this Agreement; and

**WHEREAS**, Plaintiffs' Counsel, Walcheske & Luzi, among other things, analyzed and evaluated the merits of the claims made against Defendant in the FLSA Claim, conducted interviews with Plaintiffs, responded to written discovery, prepared and served written discovery on Defendant, deposed corporate representatives, obtained and reviewed documents relating to Defendant's compensation policies and practices, and analyzed payroll data, and, based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the FLSA Claim, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of the Plaintiffs.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the FLSA Claim on the following terms and conditions.

**1. DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1** "Complaint" means the federal court Complaint dated March 2, 2018 that was filed in the United States District Court for the Eastern District of Wisconsin and entitled *John Weninger, on behalf of himself and all others similarly situated v. General Mills Operations, LLC*, Case No. 18-cv-321-JPS.

**1.2** "Court" means the United States District Court for the Eastern District of Wisconsin.

**1.3** "Defendant" or "General Mills" means General Mills Operations, LLC.

**1.4** "Defendant's Counsel" means Littler Mendelson P.C.

**1.5** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this FLSA Litigation, including FICA, FUTA, and SUTA obligations, which are not included in the Gross Settlement Amount.

**1.6** "FLSA Claim" means the FLSA claims raised on behalf of the collective in the litigation captioned *John Weninger v. General Mills Operations, LLC*, Case No. 18-CV-321-JPS filed in the United States District Court for the Eastern District of Wisconsin.

**1.7** "FMLA Claim" means the FMLA claims raised by Weninger individually in the litigation captioned *John Weninger v. General Mills Operations, LLC*, Case No. 18-CV-321-JPS filed in the United States District Court for the Eastern District of Wisconsin.

**1.8** "Gross Settlement Amount" means One Hundred Twenty Seven Thousand, Five Hundred Dollars And Zero Cents ($127,500.00) which is the maximum amount that Defendant has

agreed to pay to fully resolve and settle the FLSA Claim, and which includes any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Plaintiffs, and any Court-approved Service Awards. Defendant will not be required to pay any more than the Gross Settlement Amount, except for the Employer Payroll Taxes.

**1.9** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions, payments, or allocations for: (a) Court-approved attorneys' fees and costs for Plaintiffs' Counsel; and (b) Court-approved Service Award for Weninger.

**1.10** "Notice Packet" refers to, collectively, the Settlement Notice and Release and Claim Form to be issued to each Plaintiff, in accordance with Section 2.3.

**1.11** "Order Granting Approval of Settlement" or "Approval Order" means an order to be entered by the Court which gives final approval to the Settlement and this Agreement, and enters Final Judgment, dismissing the FLSA Claim with prejudice. A proposed Order Granting Approval of Settlement is attached hereto as Exhibit A.

**1.12** "Parties" collectively means the Named Plaintiff, John Weninger, individually and on behalf of the collective of individuals that he represents, and the Defendant, General Mills Operations, LLC.

**1.13** "Plaintiffs" mean all current and former hourly paid, non-exempt production employees who have filed consent to join Weninger as party plaintiffs in asserting the FLSA Claim.

**1.14** "Plaintiffs' Counsel" means Walcheske & Luzi.

**1.15** "Release" means the document entitled Release to be approved by the Court in a form substantially similar to the document attached hereto as Exhibit C.

**1.16** "Releasees" means General Mills Operations, LLC, and all of its parent organizations, holding companies, predecessors, insurers, contractors, divisions, affiliates, related companies and joint ventures, business units, subsidiaries, and successors, its current or former officers, directors, employees, and legal counsel.

**1.17** "Settlement," "Settlement Agreement," or "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them regarding the FLSA Claim, and which is subject to Court approval.

**1.18** "Settlement Effective Date" means a date which is thirty-five (35) calendar days[1] after the entry of Final Judgment in the FLSA Litigation.

**1.19** "Settlement Check" means the check issued to each Plaintiff for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

---

[1] Any reference to days herein shall mean calendar days unless otherwise stated.

**1.20** "Settlement Check Void Date" means the 120-day period that a Plaintiff has to sign and cash a Settlement Check after it is received as defined in Section 2.

**1.21** "Settlement Payments" means the settlement payment amounts attributed to each Plaintiff, in accordance with Section 3.4 for the amounts reflected in Exhibit C.

**1.22** "Settlement Notice" means the document entitled Notice of Settlement to be approved by the Court in a form substantially similar to the document attached hereto as Exhibit B.

**2. JUDICIAL APPROVAL AND NOTICE TO PLAINTIFFS**

**2.1** Binding Agreement. This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement and dismissal of all the FLSA Claim.

**2.2** By February 1, 2019, Plaintiffs' Counsel shall file a joint Motion for Order Approving Settlement of Collective Action ("Approval Motion"). Plaintiffs' Counsel will provide Defendant's Counsel with a draft of the Approval Motion for review and comment as soon as practicable before filing it with the Court. With the Approval Motion, Plaintiffs' Counsel also will file this Agreement along with all Exhibits attached hereto. Among other things, the Approval Motion will ask the Court to: (a) issue and enter an Order approving the Settlement as fair, adequate, and reasonable ("the Approval Order"), (b) incorporate the terms of this Settlement, and (c) enter an Order dismissing the FLSA Claim with prejudice and directing the entry of final judgment ("the Final Judgment") as to the FLSA Claim.

**2.3** Within thirty-five (35) days after Final Judgment is entered, Defendant will deliver Settlement Checks, less all applicable withholdings as described in Section 3 below, to Plaintiffs' Counsel for distribution to Plaintiffs. Each Settlement Check will have the following language affixed to the endorsement side of the check:

> By negotiating this check and accepting payment, I agree to the terms set forth in the Release Form that was enclosed with this check. I specifically acknowledge that by negotiating this check and accepting payment I am giving up the right to bring suit on my own behalf against General Mills Operations, LLC, and all of its parent organizations, holding companies, predecessors, insurers, contractors, divisions, affiliates, related companies and joint ventures, business units, subsidiaries, and successors, its current or former officers, directors, employees, and legal counsel from any and all wage and hour claims that accrued while I was employed as an hourly, non-exempt employee, relating back to the full extent of the applicable statute of limitations continuing through [earlier of sixty (60) days after filing of the Approval Motion or the Court's entry of the Approval Order] including, without limitations, all state and federal claims for unpaid overtime wages, and related claims.

**2.4** In order to issue the Settlement Checks Defendant must ensure that it has all necessary information regarding Plaintiffs to issue IRS Form W-2 to each Plaintiff. To the extent Defendant reasonably determines it does not have the necessary information to issue a particular Plaintiff a check, Plaintiffs' Counsel agrees to gather such information from the Plaintiff in question and provide it to Defendant. Defendant may request an updated IRS Form W-4 when needed.

**2.5** Once delivered to Plaintiffs' Counsel, the Settlement Checks will be forwarded to all Plaintiffs, along with the Release Form. Settlement Checks issued pursuant to this Agreement shall expire upon the Settlement Check Void Date, which is one hundred twenty (120) days after issuance. After the Settlement Check Void Date, Defendant will issue a stop payment order on all uncashed or returned checks. In the event that, before the close of the Settlement Check Void Date, Plaintiffs' Counsel becomes aware that a Plaintiff did not receive the Settlement Check, or if a Plaintiff reports a lost or destroyed Settlement Check, or otherwise requests reissuance of her or his Settlement Check prior to the Settlement Check Void Date, Plaintiffs' Counsel shall so advise Defendant's Counsel and Defendant shall issue a stop payment order on the original check and issue a new check. In no event shall a Plaintiff be issued a replacement check until any prior check sent to them has been cancelled.

**3. SETTLEMENT TERMS**

**3.1 Settlement Payments.**

(A) Defendant agrees to pay up to the maximum Gross Settlement Amount, which shall fully resolve and satisfy any and all amounts to be paid to the Plaintiffs, any Court-approved Service Awards as more fully set forth herein, and any Court-approved attorneys' fees and costs. Defendant will not be required to pay more than this amount under the terms of this Agreement, with the exception of Employer Payroll Taxes.

(B) Any portion of the Net Settlement Fund that is unclaimed by Plaintiffs who do not timely sign and cash a Settlement Check, shall remain with the Defendant. There shall be no reallocation of unclaimed settlement funds to Plaintiffs.

**3.2 Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A) In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of $100,000 (One Hundred Thousand Dollars) from the Gross Settlement Amount as an award of attorneys' fees. In addition, Plaintiffs' Counsel shall seek reimbursement of $13,090 (Thirteen Thousand, Ninety Dollars) as reasonable actual case-related costs and expenses from the Gross Settlement Amount. Defendant agrees that said fees and costs are reasonable and shall not oppose these requests. These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case.

(B) The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid to Plaintiffs' Counsel and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any money requested for attorneys' fees or costs that are not approved by the Court shall remain with the Defendant.

**3.3 Service Awards.**

(A) In the Approval Motion, Weninger will apply to the Court for a service award payable from the Gross Settlement Amount for the services he rendered to the Plaintiffs. Weninger will request payment of Five Thousand Dollars and Zero Cents ($5,000.00). Defendant agrees to and shall not oppose this request.

(B) This Service Award and any requirements for obtaining any such payment are separate and apart from, and in addition to, Weninger's recovery from the Net Settlement Fund as a Plaintiff. The substance of the Weninger's application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. Any Service Award money not approved by the Court shall remain with the Defendant.

**3.4 Distribution of Payments.**

(A) The payments from the Gross Settlement Amount to Plaintiffs' Counsel for any Court-approved attorneys' fees and costs will be wired to Plaintiffs' Counsel by Defendant within forty-five (45) calendar days after the Court has approved such payments.

(B) The Settlement Checks and Service Awards will be mailed to Plaintiffs by Plaintiffs' Counsel in accordance with Section 2.5, above.

(C) The allocation to Plaintiffs for their Settlement Payments will be made from the Net Settlement Fund for the gross amounts reflected in Exhibit D.

(D) Each Opt-In Plaintiff who received the Wage Incentive Bonus shall receive a total of $10.00.

(E) Each Opt-In Plaintiff who received the Wage Incentive Bonus and the Lump Sum Merit Bonus shall receive $35.00.

(F) Each Opt-In Plaintiff who received a Wage Incentive Bonus and a Gift-Award shall receive $5.00.

(G) Tax Characterization of Payments.

(1) Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the Internal Revenue Service ("IRS") and to Plaintiffs' Counsel on an IRS Form 1099.

(2) Payment of a Service Award pursuant to Section 3.3 shall be deemed a payment for settlement of claims for wages such that General Mills will deduct all applicable withholding taxes and other amounts required by law from this sum. **This gross payment shall be reported on a W-2 to Weninger.**

(3) The payments to each Plaintiff pursuant to Section 3.4(C)-(F) shall be treated as alleged wage relief. These payments shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the IRS and the payee under the payee's name and Social Security number on an IRS Form W-2. Defendant shall withhold payroll taxes and other lawful withholdings and will issue each Plaintiff an IRS Form W-2.

(4) The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Plaintiff receiving a Settlement Check or Service Award. The Parties and their Counsel make no representations as to the taxability of any portions of the settlement payments to any Plaintiffs, the payment of any costs or award of attorneys' fees, or any payment to the Plaintiffs. Neither Plaintiffs' Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(5) None of the amounts paid to the Plaintiffs shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendant, including for purposes of any bonus of any kind.

**4. RELEASE OF CLAIMS**

**4.1** Release By Plaintiffs. Conditioned upon the Court's issuance of the Approval Order and the entry of Final Judgment, and in exchange for the monetary consideration recited in this Agreement, Weninger hereby agrees to dismiss the FLSA Claim with prejudice. Defendant will send each Plaintiff a Release Form. Upon negotiation of the Settlement Check and acceptance of payment, each Plaintiff, including Weninger, will release the Releasees from: any and all wage and hour claims that accrued while employed at as an hourly paid, non-exempt production employees, relating back to the full extent of the applicable statute of limitations and continuing through the earlier of sixty (60) days after filing of the Approval Motion or the Court's entry of the Final Judgment, including, without limitations, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, and any other claims

derived from the alleged failure to pay such wages when due (collectively, "Released Claims").

**5. VOIDING THE AGREEMENT**

**5.1** If the Court rejects the Settlement and/or this Agreement, fails to approve and enter the Approval Order in substantially the form submitted by the Parties, or fails to enter Final Judgment, unless the Parties agree in writing, this Agreement shall be void *ab initio* except as to the provisions expressly stated in this Agreement to survive, and Defendant shall have no obligations to make any payments under the Settlement or this Agreement.

**5.2** A decision of the Court declining to approve any material condition of this Agreement which effects a fundamental change of the Parties' agreement (except as to any payment under Sections 3.2 and 3.3), including but not limited to requiring that Defendant pay any amount in excess of the Gross Settlement Amount except as described herein, shall render the entire Settlement voidable and unenforceable as to all Parties at the option of either Party. Each Party may exercise its option to void this Settlement by giving notice, in writing, to the other and to the Court within fifteen (15) days of the Court's disapproval of any material condition, but in no event at any time after the Approval Order.

**5.3** In the event that the Court fails to approve the Settlement and/or this Agreement, the Parties (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated Settlement and Agreement and/or (b) either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement or Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the FLSA Claim will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

**6. PARTIES' AUTHORITY**

**6.1** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties (including all Plaintiffs, through their representation by Weninger and Plaintiffs' Counsel) hereto to the terms and conditions hereof.

**7. MUTUAL COOPERATION**

**7.1** The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this

Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

**8. NOTICES**

**8.1** Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs:

Scott Luzi
David Potteiger
Walcheske & Luzi
15850 W. Bluemound Rd, Suite 304
Brookfield, WI 53005
Telephone: (262) 780-1953
Facsimile:
E-Mail: sluzi@walcheskeluzi.com; dpotteiger@walcheskeluzi.com

To Defendant:

Shanthi Gaur
Littler Mendelson P.C.
321 N. Clark, Suite 1000
Chicago, IL 60654
Telephone: (312) 795-3293
Facsimile: (312) 372-7880
E-mail: sgaur@littler.com

**9. NO ADMISSION OF LIABILITY**

**9.1** Defendant denies all of the allegations made by Plaintiffs in the Complaint and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Complaint. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the FLSA Claim on the terms and conditions set forth in this Agreement.

**10. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS**

**10.1** Further Acts. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**10.2** No Assignment. Plaintiffs' Counsel and Weninger represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any

9

claim or any portion thereof or interest therein, including, but not limited to, any interest in the FLSA Claim, FMLA Claim, or any related action, and any attempt to do so shall be of no force or effect.

**10.3** Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**10.4** Binding Effect. This Agreement shall be binding upon the Parties and, with respect to the Plaintiffs, their spouses, children, representatives, heirs, Administrators, executors, beneficiaries, conservators, attorneys and assigns.

**10.5** Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**10.6** Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**10.7** Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**10.8** Governing Law. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Wisconsin, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**10.9** Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**10.10** Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the

right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**10.11** Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**10.12** Non-Publication**.** Plaintiffs' Counsel and Plaintiffs agree to make no public comment, communications to the media, or any form of advertising or public announcement, including social media, regarding this settlement

**10.13** Facsimile, Electronic and E-mail Signatures. Any Party may execute this Agreement by signing or by causing its counsel to sign, or by e-signature on the designated signature block below and transmitting that signature page via facsimile, e-mail, or other electronic means to counsel for the other Party. Any signature made and transmitted by facsimile, e-signature, or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile, e-signature or e-mail.

**10.14** Signatories. This Agreement is valid and binding if signed by Defendant's authorized representative and Weninger.

WE AGREE TO THESE TERMS.

JOHN WENINGER:

_/s/ John Weninger_

Dated: 12/26/2018

GENERAL MILLS OPERATIONS, LLC:

By: _____

Its: _____

Dated: _____

**WE AGREE TO THESE TERMS.**

JOHN WENINGER:

Dated: _____

GENERAL MILLS OPERATIONS, LLC:

By: _____

Its: Asst. General Counsel

Dated: 1/2/19

# Exhibit A

[draft to be provided by Plaintiffs' Counsel]

# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**John Weninger, on behalf of himself and all others similarly situated,**

     **Plaintiff,**

 vs.

**General Mills Operations, LLC,**

     **Defendant**

**Case No. 18-cv-321**

---

To:

[Name]
[Address]
[City, State Zip]

**You joined the lawsuit identified above. Recently, the United States District Court approved a settlement of the lawsuit and authorized this Notice.**

**You are entitled to a payment from the settlement of this collective action lawsuit if you complete and return the enclosed form.**

- This Notice is directed to you because you worked for General Mills as an hourly paid, non-exempt production employee at some point between March 2, 2015 and March 2, 2018 and previously opted into this lawsuit by filing consent to join the action.

- The Plaintiff alleges that he and the potentially similarly-situated group were not properly and lawfully compensated correctly at an overtime rate of pay for all work performed in excess of forty (40) hours in a workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Specifically, Plaintiff alleges that he and the potentially similarly-situated group received a "wage incentive bonus" from General Mills that was not included in their regular rates of pay for overtime compensation purposes during workweeks when they worked in excess of forty (40) hours during representative time period for which the "wage incentive bonus" covered. Plaintiff alleges that as a result of this practice, he and the potentially similarly-situated group were denied additional overtime compensation due to them under the FLSA in said workweeks when they worked in excess of forty (40) hours during representative time period that the "wage incentive bonus" covered.

- You previously agreed for the Plaintiff and his attorneys to act on your behalf in this lawsuit.

- General Mills has denied the allegations in the Complaint and asserts that all hourly paid,

1

- non-exempt production employees were compensated correctly under the law. Nevertheless, the Parties have agreed to settle this dispute for the purpose of avoiding further disputes and litigation with its attendant risk, expense, and inconvenience. The Court has not made any ruling on the merits of the claims and no Party has prevailed in this action. However, the Court has reviewed and approved the Settlement and this Notice.

- You previously consented for Plaintiffs' Counsel to represent you as your lawyers in this Lawsuit. Plaintiffs' Counsel is encouraging all eligible hourly paid, non-exempt production employee who have opted in to complete the enclosed forms and accept their settlement payment.

- The settlement check to which you are entitled is enclosed.

- By negotiating the check and accepting payment, you acknowledge and fully and completely release General Mills Operations, LLC and all of its parent organizations, holding companies, predecessors, insurers, contractors, divisions, affiliates, related companies and joint ventures, business units, subsidiaries, and successors, its current or former officers, directors, employees, and legal counsel (collectively, the "Releasees") from: any and all federal, state and local wage and hour claims that accrued while I was employed by General Mills as an hourly paid, non-exempt production employee, relating back to the full extent of the federal statute of limitations and continuing through [earlier of sixty (60) days after filing of the Approval Motion or the Court's entry of the Approval Order], including, without limitations, all claims for unpaid overtime wages, related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, and any other claims derived from the alleged failure to pay such wages when due.

- Neither Plaintiffs' Counsel nor General Mills make any representations concerning the tax consequences of your settlement payment.

### 1. How much is my payment and how was it calculated?

When you properly execute and timely return the enclosed Release and Claim Form, you will be sent an estimated settlement payment in the amount of $_____, which is subject to deductions for applicable taxes and withholding like any other paycheck, and for which you will receive an IRS Form W-2.

sluzi@walcheskeluzi.com

### 2. What am I giving up by accepting the settlement check?

By signing and returning your Release and Claim Form in exchange for a settlement check, you waive, release, and forever discharge General Mills and the Releasees from any and all wage and hour claims asserted in the Litigation or that could have been so asserted under the FLSA based on the allegations in the Complaint in the Litigation that accrued during your employment as an exempt hourly paid, non-exempt production employee during the statute of limitations

through [earlier of 60 days after filing the Approval Motion or entry of Approval Order], including claims for liquidated damages, attorneys' fees, costs and expenses.

The lawyers representing you believe that this settlement is a fair and reasonable resolution of the case, and encourage you to complete the paperwork enclosed to receive your Settlement Check.

### 3. How will the lawyers be paid?

The Court has approved payment to Plaintiffs' Counsel of $100,000 for attorneys' fees, in addition to $13,090 in costs and expenses. These fees compensate Plaintiffs' Counsel for investigating the facts, litigating the case and negotiating and finalizing the settlement. The Court also has approved payment of Plaintiffs' Counsel's out-of-pocket costs. In addition, the Court has approved a payment of $5,000 to Weninger to recognize the risks he took and his service to the collective action, including representing you as authorized.

### 4. Are there more details about the Settlement?

This Notice summarizes the proposed settlement. More details are in a Settlement Agreement. You are encouraged to read it. To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control. You may obtain a copy of the Settlement Agreement by requesting one from the Plaintiffs' Counsel at the contact information listed in Section 2, above. You may also contact Plaintiffs' Counsel with any questions you have about the settlement.


DATED: _____, 2019

# Exhibit C

[omitted]